IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JOHN T. GORE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 3:02-CV-1008 |
| | ) | |
| EL PASO ENERGY CORPORATION | ) | Judge Trauger |
| LONG TERM DISABILITY PLAN, | ) | |
| | ) | Magistrate Judge Brown |
| LIBERTY LIFE ASSURANCE COMPANY | ) | |
| OF BOSTON, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| EL PASO ENERGY CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM

This ERISA action arises out of plaintiff John T. Gore's claim for disability benefits, under an employee group disability income policy maintained by his former employer, defendant El Paso Energy Corporation ("El Paso"), and insured by defendant Liberty Life Assurance Company of Boston ("Liberty"). This Memorandum supplements the court's December 2, 2004 Order and accompanying Memorandum (Docket Nos. 65, 66) denying the plaintiff's claim for long-term disability benefits, pursuant to 29 U.S.C. § 1132(a)(1)(B), and dismissing Gore's claim for civil penalty, pursuant to 29 U.S.C. § 1132(c). Following these rulings, as well as a

1

case management conference, the court ordered the plaintiff to file a brief addressing the viability of his remaining claims for breach of fiduciary duty, pursuant to 29 U.S.C. § 1132(a)(3), in light of *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609 (6th Cir. 1998). The plaintiff so filed on February 4, 2005 (Docket No. 71) and, on March 4, 2005, the defendants filed a court-ordered response (Docket No. 73). For the reasons expressed herein, the court finds that the plaintiff is not entitled to proceed under Section 1132(a)(3) on his claims for breach of fiduciary duty.

I.      **Factual Background and Procedural History**

This court summarized the extensive procedural and factual history relating to plaintiff's claim for benefits and his claim for civil penalties in the Memorandum accompanying its December 2, 2004 Order (Docket Nos. 65, 66), which is adopted herein by reference. Additional background relevant to his claims for breach of fiduciary duty follows.[1]

In 1996, defendant El Paso acquired Tennessee Gas Pipeline Company ("Tennessee Gas"), a subsidiary or division of Tenneco, Inc. ("Tenneco"). As a result, the plaintiff became an employee of El Paso. According to the plaintiff, during the period in which Tenneco owned the Tennessee Gas operations, the plaintiff was covered under a long term disability ("LTD") plan, sponsored by Tenneco, that provided LTD benefits until the age of 65, as long as the participant remained disabled throughout such period. Notably, under the Tenneco LTD plan, a participant could receive benefits for twenty-four months under an "own occupation" disability

---

[1] Unless otherwise noted, the additional facts have been drawn from the plaintiff's Complaint. (Docket No. 1)

and, thereafter, under the "any occupation" disability rule.[2]

During the summer of 1996, the plaintiff received a summary plan description from Tenneco, which, in part, described the benefits payable under the Tenneco LTD plan. Shortly after El Paso acquired the Tennessee Gas operations of Tenneco, also during the summer of 1996, El Paso's area manager and the human resources manager (former employees of Tenneco) met with El Paso's new employees of the former Tennessee Gas operations, including the plaintiff. During this meeting or meetings, the employees were told that their benefits at El Paso would remain the same as they were at Tenneco and that the El Paso Plan provided disability benefits until age 65.

At no time during his employment with El Paso did the plaintiff receive a summary plan description for the El Paso Plan, nor was he informed that, under the El Paso Plan, a participant could receive benefits for only twelve months under an "own occupation" disability (as opposed to the twenty-four months provided in the former Tenneco plan) and, thereafter, under the "any occupation" disability rule. Plaintiff alleges that, based upon El Paso's promises, misrepresentations, and/or omissions, he elected coverage under the Plan and paid premiums for such coverage until his employment with El Paso terminated on November 28, 2000, when Gore suffered injuries as a result of a natural gas explosion at the El Paso facility.

As a result of these injuries, Gore filed a claim for LTD benefits with Liberty. Liberty subsequently found Gore disabled under the "own occupation" definition of disability and

---

[2]Thus, under the Tenneco policy, an employee could receive long-term disability benefits for twenty-four months if his injury prevented him from performing his own occupation (the job held at the time of the injury). To continue receiving benefits after this period, an employee would have to demonstrate that his injury prevented from working in any occupation for which he was qualified.

3

extended benefits to him for one year. After this period expired, however, Liberty denied Gore's claims for continued benefits under the "any occupation" definition of disability.

On October 23, 2002, Gore filed a Complaint in this court, asserting, in addition to his claim for wrongful denial of long-term disability benefits under El Paso's LTD Plan, pursuant to 29 U.S.C. § 1132(a)(1)(B), and his claim for civil penalties, pursuant to 29 U.S.C. § 1132(c), claims against both Liberty and El Paso for breach of fiduciary duty. (Docket No. 1) Specifically, Gore alleges that defendant Liberty breached its fiduciary duties by "failing to administer the Plan in accordance with its terms and for the exclusive benefit of Plan participants and beneficiaries" (*id.* at XXI), and that defendant El Paso breached its fiduciary duties by misrepresenting to its employees, during the 1996 employee meeting or meetings, that the benefits provided under the Plan were the same as the benefits provided under its predecessor's long-term disability plan, thereby inducing its employees to purchase coverage under the Plan and/or remain employed with El Paso as a result of such promises and misrepresentations (*id.* at XXIV). Pursuant to 29 U.S.C. § 1132(a)(3), Gore requests "other appropriate equitable relief" to remedy these violations,.

In its December 2, 2004 Order and Memorandum, the court did not rule on the plaintiff's claims for breach of fiduciary duty because, in the stipulated Case Management Order (Docket No. 33), the parties agreed to structure the case in two separate stages:

> Since this case involves not only a claim for benefits, but also claims for a civil penalty and for breach of fiduciary duty, the parties believe that this case should be structured in two stages. The first stage (during which Plaintiff's claim for benefits and civil penalty will be decided) is addressed herein. Once the Court has ruled on the anticipated cross motions for judgment regarding Plaintiff's benefits claim, the parties anticipate that another case management conference will be needed to deal with the details of the second stage of the case (i.e. Plaintiff's breach of fiduciary claims against El Paso). *To the extent that the*

*Order ruling on Plaintiff's and Liberty's cross motions for judgment awards full benefits to Plaintiff from the date of curtailment of benefit payments through his attainment of age 65, the second stage of the case becomes moot.* To the extent that the order ruling on Plaintiff's and Liberty's cross motions for judgment does not award such benefits to Plaintiff and does not set a date for the second case management conference, counsel for Plaintiff will contact Judge Trauger's Clerk within five (5) days after receipt of the Court's Order and Memorandum decision to set such date.

(Docket No. 33) (emphasis added)

After the court issued its December 2, 2004 Order and Memorandum affirming Liberty's decision to deny Gore's claim for long-term "any occupation" disability benefits under the El Paso LTD Plan and dismissing the plaintiff's claim for civil penalties against Liberty and El Paso (Docket Nos. 65, 66), the parties submitted a Joint Position Statement (Docket No. 68), in which the plaintiff stated his theory of recovery on the remaining claim for breach of fiduciary duty against El Paso:[3]

> Plaintiff's remaining cause of action against El Paso can essentially be stated in two parts. First, since this Court has found that Plaintiff is not entitled to long term disability benefits from Liberty, Plaintiff seeks equitable relief under ERISA against El Paso due to its breach of fiduciary duties in misrepresenting benefits payable under the LTD Plan and/or its failure to timely provide a summary plan description and other LTD Plan-related documents.... Alternatively, to the extent that [the persons who allegedly made the misrepresentations] did not make any misrepresentations as to benefits payable under the LTD Plan, the failure of El Paso to notify Plaintiff of changes to the LTD Plan (i.e. to reduce the 24-month "own occupation " benefit period under Tenneco's plan to 12 months) caused Plaintiff to continue to rely upon [the] characterization of the benefits payable under the LTD Plan, to Plaintiff's detriment (since Plaintiff opted not to purchase

---

[3]The plaintiff did not address the breach of fiduciary claims raised in his Complaint against Liberty, nor has he done so in his subsequent briefs to the court. By virtue of the plaintiff's silence, these claims for breach of fiduciary duty against Liberty will be deemed waived. *See Farm Labor Org. Comm. v. Ohio State Highway Patrol,* 308 F.3d 523, 544 n. 8 (6th Cir.2002) ("It is well established that an issue not raised in a party's briefs may be deemed waived.").

5

> additional disability coverage thinking that the LTD Plan's benefits were sufficient)....
> The equitable relief Plaintiff seeks is instatement in a plan that conforms to the long term disability benefit plan that El Paso or its agents or designees represented to Plaintiff and other employees verbally....
> Second, Plaintiff seeks an injunction against El Paso enjoining and restraining it and its employees and agents from further violations of ERISA with respect to LTD Plan-related communications to employees, pursuant to ERISA.

(Docket No. 68)

In response, El Paso contends, among other things, that "Plaintiff may not pursue equitable relief under the catch-all provision of § 1132(a)(3) because § 1132(a)(1)(B) provides a remedy for his claimed wrongful denial of benefits." (*Id.*) Taking all of the allegations pleaded in the Complaint as true, the court addresses this argument herein.

**II**.    **Analysis**

A. Simultaneous Claims Under Both § 1132(a)(1)(B) and § 1132(a)(3)

Section 1132(a) of ERISA provides that:

> A civil action may be brought–
> (**1**) by a participant or beneficiary
>     (A) for the relief provided for in subsection (c) of this section [providing for liquidated damages for failure to provide certain information on request], or
>     (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
> (**2**) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title [entitled "Liability for Breach of Fiduciary Duty"];
> (**3**) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;....

29 U.S.C. § 1132(a); *see also Varity Corp. v. Howe*, 516 U.S. 489, 507 (1996).

6

In *Varity Corp. v. Howe*, the Supreme Court dealt with the interplay of these § 1132(a) subsections in ruling that a group of beneficiaries who had been denied benefits under an ERISA plan could bring an individual action for breach of fiduciary duty under § 1132(a)(3)(B). 516 U.S. at 512. There, the plaintiff beneficiaries were former employees of the defendant who lost their benefits when, soon after the defendant assigned them to a new benefit plan, the new plan entered into a receivership. Thereafter, the former employees sued the defendant under ERISA for breach of fiduciary duty, seeking to be reinstated into the former plan. The Court held that the former employees could seek relief under § 1132(a)(3), finding that the section was a "catchall" provision that served "as a safety net offering appropriate relief for injuries caused by violations that [§ 1132] does not elsewhere adequately remedy." *Id*. Notably, in response to the defendant's argument that the more specific *second* subsection of § 1132(a) (which specifically refers to breaches of fiduciary duty through its cross-reference to § 1109) renders the more general *third* subsection (the "catchall") inapplicable to claims of fiduciary breach, the Court stated that:

> ERISA specifically provides a remedy for breaches of fiduciary duty with respect to the interpretation of plan documents and the payment of claims, one that is outside the framework of the second subsection and cross-referenced § [1109], and one that runs directly to the injured beneficiary. § [1132](a)(1)(B). Why should we not conclude that Congress provided yet other remedies for yet other breaches of other sorts of fiduciary obligation in another, "catchall" remedial section?

*Id*. at 512 (internal citations omitted). Thus, according to the Court, while the remedy for a breach of fiduciary duty related to the interpretation of plan documents and the payment of claims is encompassed in a §1132(a)(1)(B) claim for benefits, the remedy for "other breaches of other sorts of fiduciary obligation" may be sought under §1132(a)(3).

7

However, the Court pointed out that, under the explicit terms of § 1132(a)(3), such equitable relief may only be sought if it is "appropriate." As a result, the Court found "unlikely to materialize" the defendant's concern that an ERISA claimant may attempt to repackage his or her § 1132(a)(1)(B) denial of benefits claim as a § 1132(a)(3) claim for breach of fiduciary duty. *Id*. at 514. The Court explained that, "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'" *Id*. at 515. In *Varity*, however, the plaintiffs were no longer members of the plan and, thus, had no remedy pursuant to § 1132(a)(1)(B) because they had no "benefits due [them] under the terms of [the] plan." Nor could the plaintiffs proceed under the second subsection, § 1132(a)(2), because that section does not provide a remedy for individual beneficiaries. Under these circumstances, the Court found that "[t]hey must rely on the *third* subsection or they have no remedy at all," and, thus, allowed the former employees to invoke § 1132(a)(3)(B). *Id*. at 515.

In *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609, 615 (6th Cir. 1998), the Sixth Circuit interpreted *Varity* for the first time and held that, since the "Supreme Court clearly limited the applicability of § 1132(a)(3) to beneficiaries who may not avail themselves of § 1132's other remedies," 150 F.3d at 615 (citing *Varity*, 516 U.S. at 512), the plaintiff could not bring a cause of action for breach of fiduciary duty pursuant to §1132(a)(3)[4] where §1132(a)(1)(B) provided a potential remedy for his alleged injury:

> Because § 1132(a)(1)(B) provides a remedy for Wilkins' alleged injury that
> allows him to bring a lawsuit to challenge the Plan Administrator's denial of

---

[4]In *Wilkins*, the plaintiff claimed that the plan administrator breached its fiduciary duty to act solely in Wilkins's interest "for the exclusive purpose of providing benefits to him." *Id*.

8

> benefits to which he believes he is entitled, he does not have a right to a cause of action for breach of fiduciary duty pursuant to § 1132(a)(3). Wilkins availed himself of the remedy available to him under the statute. The district court reviewed his claim *de novo* and concluded that [the administrator's] denial of benefits was correct. Wilkins therefore has no cause of action under any other subsection of § 1132.

*Id*. at 615.

In addition, the Court found the Supreme Court's ruling in *Varity* permitting a claim under § 1132(a)(3) distinguishable because, there, the employer-insurer deliberately misled the plaintiffs, causing them to lose their benefits. *Id*. Unlike the plaintiffs in *Varity*, the Court found that there was no misleading or deceit on the part of Wilkins's employer or insurer and found Wilkins's contention that he was not afforded a full and fair review of his benefits claim meritless. *Id*. at 615–16. Earlier in the opinion, the Sixth Circuit had rejected Wilkins' § 1132(a)(1)(B) claim and affirmed the judgment of the district court upholding the plan administrator's denial of benefits. *Id*. at 614. Yet, notwithstanding the fact that the plaintiff did not successfully obtain a remedy pursuant to § 1132(a)(1)(B), the Court concluded that Wilkins could not bring a § 1132(a)(3) claim for breach of fiduciary duty. *Id*. at 616. According to the Court, "[t]o rule in Wilkins's favor would allow him and other ERISA claimants to simply characterize a denial of benefits as a breach of fiduciary duty, a result which the Supreme Court expressly rejected." *Id*.

The defendants contend that, following *Wilkins*, it is Sixth Circuit law that a plaintiff who is permitted to bring a § 1132(a)(1)(B) claim for denial of benefits and does so is, under no circumstances, permitted to also bring a § 1132(a)(c) claim, regardless of the success of the § 1132(a)(1)(B) claim or the substance of the § 1132)(a)(c) claim. (Docket No. 73) Several succeeding Sixth Circuit decisions suggest as much. *See Marks v. Newcourt*, 342 F.3d 444, 454

9

(6th Cir. 2003) ("In this case, Marks is permitted to file and has filed a suit pursuant to [§ 1132(a)(1)(B)], challenging the administrator's decision to deny benefits. Therefore, because the district court is correct that 'ERISA § [1132](a)(1)(B) provides plaintiff a remedy for the alleged injury, the denial of benefits, and allows him to bring a lawsuit to challenge the denial of benefits,' we affirm the dismissal of Marks's claim for breach of fiduciary duty.") (internal citations omitted); *Julia v. Bridgestone/Firestone, Inc.*, No. 02-4376, 2004 U.S. App. LEXIS 10662, at **7 (6th Cir. May 27, 2004) ("The district court correctly noted that a plaintiff who has standing to pursue a claim for recovery of benefits under 29 U.S.C. § 1132(a)(1)(B) cannot pursue a claim for equitable relief under § 1132(a)(3), which instead operates as a catchall for plaintiffs not otherwise provided for under § 1132... a plaintiff who has a cause of action under § 1132(a)(1)(B) cannot pursue a claim under § 1132(a)(3), *regardless of the substance of her claim*.") (emphasis added); *Putney v. Medical Mutual of Ohio*, No. 02-3901, 2004 U.S. App. LEXIS 19278 at **7 (6th Cir. Sept. 10, 2004); *Lee v. MBNA*, No. 04-3105, 136 Fed. Appx. 734 at *745–46 (6th Cir. March 29, 2005). However, the Sixth Circuit has recently clarified that, under some circumstances, an ERISA plaintiff may simultaneously bring claims under both § 1132(a)(1)(B) and § 1132(a)(3). *Hill v. Blue Cross & Blue Shield of Michigan*, 409 F.3d 710, 718 (6th Cir. 2005).

In *Hill*, participants in an employer-sponsored health plan filed a putative class action against the plan's third-party administrator, alleging that its handling of their claims for emergency medical treatment expenses resulted in the wrongful denial of benefits and constituted a breach of the administrator's fiduciary duties to program participants. The plaintiffs sought recovery of benefits, pursuant to 29 U.S.C. § 1132(a)(1)(B), as well as

10

declaratory and injunctive relief for breach of fiduciary duties, pursuant to 29 U.S.C. 1132(a)(3).
The district court, relying largely on *Wilkins*, dismissed the breach of fiduciary duty claim as a
repackaged claim for individual benefits. The Sixth Circuit, however, found *Wilkins* of limited
applicability since *Wilkins*, unlike *Hill*, did not involve fiduciary duty claims arising out of
defects in plan-wide claims-handling procedures. Reversing the district court's decision, the
Court stated:

> In this case, an award of benefits to a particular Program participant based on an
> improperly denied claim for emergency-medical-treatment expenses will not
> change the fact that BCBSM is using an allegedly improper methodology for
> handling all of the Program's emergency-medical-treatment claims. Only
> injunctive relief of the type available under § 1132(a)(3) will provide the
> complete relief sought by Plaintiffs by requiring BCBSM to alter the manner in
> which it administers all the Program's claims for emergency-medical-treatment
> expenses.

409 F.3d at 718. In other words, because an award of individual benefits pursuant to
1132(a)(1)(B) could not provide an adequate remedy for the alleged injury to the plaintiffs
caused by the breach of fiduciary duties, outright dismissal of the plaintiffs' §1132(a)(3) claims
was inappropriate.

*Hill* essentially revisits the very foundation of *Wilkins*– that, pursuant to *Varity*,
§ 1132(a)(3) is a catchall provision that offers appropriate equitable relief only for "injuries
caused by violations that § [1132] does not elsewhere adequately remedy." 516 U.S. at 512.
*Hill* thus clarifies that, contrary to the implications of cases like *Marks* and *Julia*, dismissal of a
§ 1132(a)(3) claim is not automatic simply because a plaintiff has standing to pursue a
§ 1132(a)(1)(B) denial of benefits claim. Rather, dismissal of a § 1132(a)(3) claim is appropriate
only if the alleged injury to the plaintiff may be completely remedied under the asserted

11

§ 1132(a)(1)(B) claim for benefits, or any other §1132 provision for that matter.[5] The availability of an adequate remedy for the alleged injury, rather than the actual substance of the claim, was the very essence of the Supreme Court's concern in *Varity*.

Here, Gore has admitted that the injury caused by El Paso's alleged breach of fiduciary duties may have been adequately remedied under his asserted § 1132(a)(1)(B) denial of benefits claim. From the very inception of the case, when the parties agreed to structure the case in two stages, Gore maintained that proceeding with the second stage of the case, which involves only his breach of fiduciary duty claims, would only be necessary if his denial of benefits claim did not succeed in the first stage. *See* Docket No. 33 ("To the extent that the Order ruling on Plaintiff's and Liberty's cross motions for judgment awards full benefits to Plaintiff... the second stage of the case becomes moot."). Indeed, Gore has admitted that he is now pursuing equitable relief against El Paso only because his denial of benefits claim against Liberty has been rejected. (Docket No. 68) His claim challenging the administrator's denial of benefits having failed, Gore now requests a second bite of the apple. However, proceeding with stage two is inappropriate, because, as the plaintiff himself admits, 29 U.S.C. § 1132(a)(1)(B), of which Gore has availed himself, provided an adequate remedy covering the full extent of his alleged injuries.

In light of these facts, as well as the aforementioned admissions, the court finds that the plaintiff's remaining claim against El Paso for breach of fiduciary duty is nothing more than a repackaged denial of benefits claim, precisely the type of claim expressly rejected by the Supreme Court in *Varity*, and the Sixth Circuit in *Wilkins*. Equitable relief under §1132(a)(3) is,

---

[5]The Supreme Court, in *Varity*, and the Sixth Circuit, in *Wilkins*, sought only to ensure that an ERISA claimant could, in fact, seek such a remedy. Whether the plaintiff ultimately succeeds in obtaining such a remedy is of no concern.

therefore, not "appropriate," and Gore's breach of fiduciary duty claims against El Paso must be dismissed.

      B. Equitable Estoppel under § 1132(a)(1)(B)

Gore next asserts that, if his claims against El Paso for breach of fiduciary duty are not considered viable under § 1132(a)(3), then they should be construed as claims for equitable estoppel/misrepresentation under 29 U.S.C. § 1132(a)(1)(B) and not be dismissed at this time.

The court understands Gore's alternative claim as one seeking plan benefits, pursuant to § 1132(a)(1)(B), according to the terms of the El Paso Plan as allegedly represented to him by El Paso. It is unclear, however, whether such a claim may be properly asserted under § 1132(a)(1)(B). In *Julia v. Bridgestone/Firestone*, the Sixth Circuit questioned whether it was appropriate to characterize a plaintiff's claim seeking the recovery of plan benefits not according to the terms of the plan as actually written, but, instead, as the terms were represented to her by the defendant, as an action under § 1132(a)(1)(B), rather than an action for equitable relief under § 1132)(a)(3). 2004 U.S. App. LEXIS at **8–11. The Court noted that, because "in a strict sense," such a plaintiff is not seeking to recover benefits due "under the terms of the plan," some courts have construed § 1132(a)(1)(B) strictly and refused recovery under that section in these circumstances. *Id*. at **8. However, the Court also noted that, because the form of relief sought was primarily a money judgment for past alleged underpayments and a future stipulation of the amount the plaintiff was to receive, it was unclear whether the plaintiff could seek relief under §1132(a)(3), which authorizes only appropriate *equitable* relief. *Id*. at **10. Recognizing that the doctrine of equitable estoppel "has sometimes been considered a doctrine that can apply in

13

§ 1132(a)(1)(B) actions to estop the plan from being enforced as written, sometimes a doctrine that can be used in § 1132(a)(3) to gain similar relief, and sometimes as a free-floating common law cause of action under ERISA," the Court declined to "wade too deeply into th[e] morass" of whether the plaintiff properly sought to recover under § 1132(a)(1)(B) and estop the defendant from deviating from its misrepresentations to the plaintiff, or sought equitable estoppel under § 1132(a)(3) for a breach of fiduciary duty. *Id*. at \*\*10–12. Rather, the Court found that, under either provision, the claim would fail, because the plaintiff could not show reasonable reliance on the defendant's misrepresentations. *Id*. at \*\*12.

Even if Gore could properly state a claim seeking to recover benefits under § 1132(a)(1)(B) and estop El Paso from diverging from its alleged misrepresentations to him, such a claim should have been pleaded in the Complaint and presented to the court during the period in which Gore's claims for benefits under 29 U.S.C. § 1132(a)(1)(B) were analyzed.[6] Instead, during the first stage of these proceedings, Gore sought to recover benefits owed to him only under the actual terms of the El Paso LTD Plan. This eleventh-hour claim for benefits owed under the *misrepresented* terms of the plan, seeking to take advantage of doctrine of equitable estoppel, simply will not be entertained at this late juncture.

---

[6]The court notes that this equitable estoppel argument also was not preserved or even referred to in the Case Management Order. (Docket No. 33)

Case 3:02-cv-01008   Document 75   Filed 10/24/05   Page 14 of 15 PageID #: 14

**III. Conclusion**

For these reasons, the plaintiff has no remaining viable claims under either § 1132(a)(3) or § 1132(a)(1)(B). An appropriate order will issue.

_____
ALETA A. TRAUGER
United States District Judge