# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| JOHN T. GORE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:02-1008 |
| | ) | Judge Trauger |
| v. | ) | |
| | ) | |
| EL PASO ENERGY CORPORATION | ) | |
| LONG TERM DISABILITY PLAN and | ) | |
| EL PASO ENERGY CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM

The defendants have filed a Motion for Summary Judgment (Docket No. 113), to which the plaintiff has responded (Docket No. 119), the defendants have replied (Docket No. 131), and the plaintiff has surreplied (Docket No. 137). Likewise, the plaintiff has filed a Motion for Summary Judgment (Docket No. 96), to which the defendant has responded (Docket No. 117), and the plaintiff has replied (Docket No.131). In addition, the court will consider the defendants' Motion to Amend Answer (Docket No. 125), to which the plaintiff has responded (Docket No. 134), and the plaintiff's Amended Alternative Motion for Reformation of Release (Docket No. 135). For the reasons discussed herein, the defendants' Motions to Amend and for Summary Judgment will be granted, and the plaintiff's Motions for Reformation and for Summary Judgment will be denied.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The plaintiff, John T. Gore, began working for Tennessee Gas Pipeline Company ("Tennessee Gas"), a subsidiary of Tenneco, Inc. ("Tenneco"), in its Portland, Tennessee

1

Facility, in April 1974.[1] In December 1996, defendant El Paso Energy Corporation ("El Paso"), acquired Tennessee Gas, and Mr. Gore remained an employee of Tennessee Gas, a subsidiary of El Paso, until November 28, 2000, when Mr. Gore suffered injuries as a result of a natural gas explosion at his workplace.

Mr. Gore had participated in Tenneco's long-term disability ("LTD") plan, which provided for "own occupation" disability benefits for 24 months and "any occupation" disability benefits thereafter until the age of 65. However, on January 1, 1998—roughly one year after El Paso acquired Tennessee Gas—a new Group Disability or Income Policy came into effect that covered Mr. Gore.[2] Under the terms of the new policy, governed by the Employee Retirement

---

[1] Unless otherwise noted, the facts have been drawn from the plaintiff's Memorandum in Support of his Motion for Summary Judgment (Docket No. 97), the plaintiff's Statement of Undisputed Material Facts (Docket No. 98), the plaintiff's Declaration (Docket No. 99), the plaintiff's Supplemental Declaration (Docket No. 120), and the plaintiff's Surreply in Opposition to the Defendant's Motion for Summary Judgment. (Docket No. 137). In addition, the facts of this case have been set forth in the Memorandum accompanying this court's December 2, 2004 Order (Docket No. 65), in the Memorandum accompanying this court's October 24, 2005 Order (Docket No. 75), and in the Sixth Circuit's February 23, 2007 Opinion, (Docket No. 81).

[2] Mr. Gore has since alleged "in the alternative" that this distinction never existed and, instead, that "[t]hroughout Plaintiff's employment with Tenneco, Tenneco maintained a long term disability plan that it administered such that if a participant therein became disabled such that he or she could no longer perform his or her job at Tenneco, the plan would pay long term disability benefits until the participant attained age 65." (Docket No. 5 at p. 5) This is not an "argument in the alternative." What Mr. Gore has done is agree to one specific fact and then, later in the case, allege a contrary, more favorable fact. That is not an argument in the alternative. The Sixth Circuit Court of Appeals has already adopted Mr. Gore's previous position that the original LTD plan provided for "own occupation" disability benefits for 24 months and "any occupation" benefits thereafter, *see Gore v. El Paso Energy Corp. Long Term Disability Plan*, 477 F.3d 833, 834 (6th Cir. 2007), and in his Statement of Undisputed Facts filed before this court, the plaintiff has continued to allege that "The Tenneco LTD Plan provided that a participant could receive benefits for 24 months under an 'own occupation' disability and thereafter under the 'any occupation' disability rule." (Docket No. 98 at ¶ 18) That is the position this court will continue to adopt. *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (The judicial estoppel doctrine "generally prevents a party from prevailing in

2

Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, "own occupation" disability benefits were limited to 12, rather than 24, months. After that period of time, "any occupation" benefits—which are only awarded if the employee can show that his injury prevents him from working in "any occupation" for which he is qualified—would still be available. Mr. Gore alleges that he did not, at any time during his employment with El Paso, receive a summary plan description and that he was not informed of any changes to the plan. Additionally, Mr. Gore alleges that he was never given any materials explaining the difference between "own occupation" and "any occupation" benefits and that he had never been informed personally of that distinction before his accident occurred.

Furthermore, Mr. Gore alleges that he was told various misleading things by Tennessee Gas and El Paso employees regarding the LTD plans. For instance, Mr. Gore alleges that, in 1995, he met with Mr. David Jones, the area manager for Tennessee Gas, and with Mr. David Milby, the human resources manager for Tennessee Gas, along with several other employees, regarding the forthcoming El Paso acquisition. At this meeting, Mr. Gore alleges that Mr. Jones and Mr. Milby told him that "everything would remain the same" regarding his benefits. (Docket No. 120 at ¶ 3-4) However, Mr. Gore concedes that neither Mr. Jones nor Mr. Milby said anything specific regarding "own occupation" and "any occupation" benefits. Mr. Gore's benefits were not changed until 1998, approximately one year after the merger and over two years after the alleged statements were made.

Mr. Gore alleges that, on the night of his accident, Mr. David Jones and Ms. Sherry Kiel,

---

one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.") (quoting *Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000)).

3

El Paso's human resources representative in Tennessee, told him that El Paso would take care of his family and "not to worry about anything." (Docket No. 120 at ¶ 12) Mr. Gore alleges that he "understood that to mean that [he] would be entitled to long term disability benefits until age 65 if [he] could no longer do [his] job at Tennessee Gas." (*Id.*) However, Mr. Gore does not allege that either Mr. Jones or Ms. Kiel told him that specifically.

On August 2, 2001, Mr. Gore met with Ms. Sherry Kiel and Mr. Mike Smith, the plant foreman for Tennessee Gas. Ms. Kiel and Mr. Smith told Mr. Gore that they did not have a job for him since, according to Mr. Gore's physician, he could not lift more than 10 to 25 pounds. They did confirm that Mr. Gore would receive disability benefits. Mr. Gore asked what he would have to do to make sure that he remained qualified for long term disability benefits. Ms. Kiel and Mr. Smith said that he would have to get a doctor's certification stating that he was still disabled. Neither Ms. Kiel nor Mr. Smith mentioned the distinction between "own occupation" and "any occupation" benefits.

On August 3, 2001, in conjunction with his termination, Mr. Gore signed a General Release And Covenant Not To Sue ("the Release"), in which he released Tennessee Gas, "its present and former parents and its trusts and plans, direct or indirect subsidiaries, affiliates and related companies or entities, regardless of its or their form of business organization," as well as "its affiliates and their directors, officers, employees, agents, and other persons acting on behalf of the Employer . . . from any and all liabilities, demands, claims or suits of whatsoever nature that I may have . . . arising from or in any way related to my employment with the Employer." In consideration for signing the Release, Mr. Gore was paid $49,000.00. The Release did not, however, include "any claim . . . for benefits arising from any retirement plan or welfare plan

4

(specifically including benefits from the Employer's long-term disability benefit plan) in which [the plaintiff] was a participant during [his] employment." (Docket No. 116, Ex.1 at ¶ 4) The plaintiff alleges that, had he known that "own occupation" benefits were limited to one year[3], he would not have signed the Release.

In October 2001, a vocational case manager, conducting a Transferable Skills Analysis, determined that, although Mr. Gore could not perform the job functions of his former position, other alternatives were available to him within the petroleum industry. The alternatives, involving either sedentary work or work with light physical demands, were Control Panel Operator, Dispatcher, and Title Clerk. In December 2001, a physician, conducting an Independent Medical Examination, recommended that Mr. Gore have certain restrictions placed on his work activities. The examination report was forwarded to another physician who essentially agreed with the evaluation.

In February 2002, Liberty Life Assurance Company of Boston ("Liberty"), ordered a Labor Market Survey to determine what positions were available under the three occupational alternatives identified by the vocational case manager. The survey, sent to nine different employers in Texas and Louisiana, indicated that Mr. Gore was currently qualified for eight of the nine available positions. In April 2002, Mr. Gore submitted his own Vocational Evaluation to Liberty, indicating that the types of jobs he could perform were not available in Tennessee. In

---

[3]Mr. Gore also alleges that, at the time, he believed that he would receive disability payments until he was 65 so long as he could not perform his job at Tennessee Gas. In other words, Mr. Gore believed that he would receive "own occupation" benefits for the duration of the coverage period (although he did not know what that specific term meant), despite the fact that, even under the original plan, Mr. Gore would only have received "own occupation" benefits for two years.

5

May 2002, Liberty sent a letter to Mr. Gore, notifying him that it had denied his claim for long term disability because other occupational alternatives in the petroleum industry were available to him. In short, Mr. Gore could not meet the "any occupation" definition of disability because he could perform several available occupations. Mr. Gore appealed the decision and, on July 23, 2002, Liberty sent Mr. Gore a letter denying the appeal.

In October 2003, Mr. Gore filed this suit against both Liberty and El Paso, alleging (1) wrongful denial of long-term disability benefits under El Paso's LTD plan under ERISA, 29 U.S.C. § 1132(a)(1)(B), (2) a claim for civil penalties due to the defendants' failure to provide certain documents within 30 days of a written request, and (3) a claim for breach of fiduciary duties against both Liberty and El Paso under ERISA, 29 U.S.C. § 1132(a)(3).

In March 2004, the parties agreed to bifurcate the litigation, first addressing the claims for benefits and civil penalties and, second, addressing the breach of fiduciary duties claims. (Docket No. 33) In December 2004, the court dismissed Mr. Gore's claims for denial of benefits and declined, in its discretion, to impose statutory penalties against El Paso. (Docket No. 66) In October 2005, the court dismissed Mr. Gore's remaining claim for breach of fiduciary duty and his concomitant request for equitable relief. (Docket No. 75) The court reasoned that the plaintiff's fiduciary duty claim was nothing more than a repackaged denial of benefits claim and, therefore, equitable relief under § 1132(a)(3) was unavailable. (*Id.*) Mr. Gore subsequently settled his claims against Liberty, who was, thereafter, dismissed from this case. (*See* Docket No. 81 at p. 4)

On February 23, 2007, the Court of Appeals for the Sixth Circuit affirmed this court's dismissal of Mr. Gore's claim for benefits and civil penalties, but reversed the court's dismissal

6

of Mr. Gore's fiduciary duty claim. (*Id*. at p. 2) The Sixth Circuit held that the fiduciary duty claim was not a repackaged claim for benefits, even though the remedy that would have been available to Mr. Gore had he prevailed on his benefits claim would have rendered his fiduciary duty claim moot. (*Id*. at p. 8-9) Instead, the Court found that, although the remedies overlapped, the injuries were different and, therefore, "[t]he two claims are distinct and unrelated to each other." (*Id*. at p. 8) Accordingly, the ruling was reversed and remanded to this court for further proceedings.

On August 3, 2007, the plaintiff filed a motion for summary judgment on his claim for breach of fiduciary duties. (Docket No. 96) On November 1, 2007, the remaining defendants filed a motion for summary judgment in their favor on the same claim. (Docket No. 113) In addition, on December 18, 2007, the defendants filed a motion to amend their Answer, seeking to include the defense of accord and satisfaction, based on the Release the plaintiff signed on August 3, 2001. (Docket No. 125) The plaintiff opposed this motion and, in the alternative, moved for reformation of the release on January 2, 2008. (Docket No. 135)

## ANALYSIS

### I.   Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). To prevail, the moving party must demonstrate the absence of a genuine issue of material fact as to an essential element of the opposing party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986);

7

*Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001).

In determining whether the moving party has met its burden, the court must view the factual evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986); *McLean v. 988011 Ontario, Ltd*., 224 F.3d 797, 800 (6th Cir. 2000). Our function "is not to weigh the evidence and determine the truth of the matters asserted, 'but to determine whether there is a genuine issue for trial.'" *Little Caesar Enters., Inc. v. OPPCO, LLC*, 219 F.3d 547, 551 (6th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

If the nonmoving party fails to make a sufficient showing on an essential element of the case—provided that the nonmoving party bears the burden for that element—the moving party is entitled to summary judgment as a matter of law. *See Williams v. Ford Motor Co.*, 187 F.3d 533, 537-38 (6th Cir. 1999). To avoid summary judgment, the nonmoving party "must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). And we must keep in mind that "[t]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 566 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 252). If the evidence offered by the nonmoving party is "merely colorable," or "not significantly probative," or not enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary judgment should be granted. *Anderson*, 477 U.S. at 249-52. Finally, "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Hill v. White*, 190 F.3d 427, 430 (6th

Cir. 1999) (citing *Anderson*, 477 U.S. at 247-49).  With this standard in mind, the court turns to an analysis of the plaintiff's claims.

## II.     The Defendants' Motion To Amend Answer

The defendants seek to amend their Answer under Rule 15 of the Federal Rules of Civil Procedure to include the affirmative defense of accord and satisfaction.  The basis of this defense is that the plaintiff obtained consideration for releasing his fiduciary duty claim when he signed the Release on August 3, 2001.  Generally, "failure to plead an affirmative defense results in the waiver of that defense and its exclusion from the case."  *Macurdy v. Sikov & Love, P.A.*, 894 F.2d 818, 824 (6th Cir. 1990) (quoting 5 C. Wright & A. Miller, *Federal Practice & Procedure*, § 1278 (1969)).  Rule 15, however, provides that, after a responsive pleading has been served, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).

Accordingly, the Sixth Circuit has held that, under Rule 15(a), leave to amend an answer to include an affirmative defense is to be "freely given when justice so requires."  *Keenaw Bay Indian Cmty. v. State of Michigan*, 11 F.3d 1341, 1348 (6th Cir. 1993) (quoting Fed. R. Civ. P. 15(a)); *see also Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999).  However, the Sixth Circuit has also held that "[d]enial may be appropriate . . . where there is 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of the amendment, etc.'"  *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002) (quoting *Foman v. Davis*, 371 U.S. 178, 182); *see also* 3 Moore's Federal Practice § 15.14[1] (3d ed. 1997).  In most cases, "delay alone, does not justify denial of leave to amend."

9

*Id.* (citing *Sec. Ins. Co. v. Kevin Tucker & Assocs., Inc.*, 64 F.3d 1001, 1009 (6th Cir. 1995)). Delay "that is neither intended to harass nor causes any ascertainable prejudice is not a permissible reason, in and of itself[,] to disallow an amendment of a pleading." *Tefft v. Steward*, 689 F.2d 637, 639 n.2 (6th Cir. 1982). In certain cases, however, "delay will become 'undue,' placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party." *Morse*, 290 F.3d at 800 (quoting *Adams v. Gould*, 739 F.2d 858, 863 (3d Cir. 1984)).

The plaintiff argues that the defendants' amendment should not be allowed because it would be futile, because it is the product of undue delay, and because it would prejudice the plaintiff. However, the amendment would not be futile; in fact, the accord and satisfaction defense is dispositive of this case. In addition, although there is scant justification for the defendants' delay in moving to amend, this delay has neither placed on unwarranted burden on the court nor prejudiced the plaintiff in any way. Under Rule 15(a), leave to amend should be granted.

### A. Futility of Amendment

Generally, an amendment is futile "if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) (citing *Thiokol Corp. v. Department of Treasury, State of Michigan, Revenue Div.*, 987 F.2d 376, 382-83 (6th Cir. 1993). Of course, 12(b)(6) motions are made with reference to complaints and not affirmative defenses; but the same basic standard applies. The court must determine whether the defendants' allegations raise the merits of the defense above a speculative level or, put differently, whether, assuming the truth of the defendants' allegations regarding the defense, it

10

nevertheless would fail.  *See State v. Mut. Life Assur. Co. of America v. Deer Creek Park*, 612 F.2d 259, 270 (6th Cir. 1979); *see also Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (holding that the proper test for determining futility of a proposed affirmative defense is identical to the one used when considering a Rule 12(b)(6) challenge to a complaint) (citing 3 J. Moore, Moore's Federal Practice ¶ 15.08[4] (2d ed. 1974)); *Campania Management Co., Inc. v. Rooks, Pitts & Poust*, 290 F.3d 843, 850 (7th Cir. 2002) (holding that a proposed affirmative defense "is futile if it sets forth facts or legal theories that are redundant, immaterial, or unresponsive to the allegations in the complaint").

The defendants' proposed amendment more than meets this standard.  In its recent opinion, the Sixth Circuit held that the plaintiff's only remaining claim in this action, alleging violations of the defendants' fiduciary duties, was viable only because it was not a claim for benefits under § 1132(a)(3) but, instead, a claim for equitable damages arising from misrepresentations under § 1132(a)(1)(B).  The plaintiff's claim for benefits under his LTD policy has already been disposed of.  Accordingly, if the fiduciary duties claim was a claim for benefits, it could not have gone forward.  *See Hill v. Blue Cross and Blue Shield of Mich.*, 409 F.3d 710, 715-16 (6th Cir. 2005) (holding that a plaintiff may simultaneously bring claims under both § 1132(a)(1)(B) and § 1132(a)(3) only if the claim under § 1132(a)(1)(B) is not a repackaged claim for individual benefits).

The plain language of the Release releases all claims except those for benefits under the defendants' retirement and welfare plans.  This puts the plaintiff in an obvious bind.  Under Sixth Circuit precedent, the fiduciary duties claim can survive only if it is not a claim for benefits; yet the plaintiff has released the defendants from all claims except those that are claims

11

for benefits. The answer to this Hobson's Choice has been provided by the Sixth Circuit: the plaintiff's fiduciary duties claim is not a claim for benefits. Therefore it has been released.

Far from futile, the accord and satisfaction defense is perfectly appropriate to this situation. An accord and satisfaction "is a method of discharging a contract or settling a cause of action arising either from contract or tort by substituting for such contract or cause of action an agreement for the satisfaction thereof and the execution of such substituted agreement." *Bowater North Am. Corp. v. Murray March, Inc.*, 773 F.2d 71, 75 (6th Cir. 1985). The "'accord' is the agreement to substitute the new obligation for the underlying cause of action or contract, while the 'satisfaction' is the execution of the agreement." *Id*. (citing *Tullahoma Concrete Pipe Co. v. Pyramid Concrete Pipe Co.*, 330 S.W.2d 578, 582 (Tenn. App. 1960)). The consideration (in this case, payment of $49,000.00) "makes it impossible for the creditor to rescind the agreement, except upon breach, . . . the performance extinguishing the underlying obligation." *Id*. (citing *American Textile Machine Corp. v. United States*, 220 F.2d 584, 587-88 (6th Cir. 1955)).

The Release is, on its face, an accord and satisfaction of the plaintiff's fiduciary duties claim. The document states that the plaintiff "hereby release[s]," the defendants "from any and all liabilities, demands, claims or suits of whatsoever nature that I may have against the Parties Released arising from or in any way related to my employment with the Employer." The Release contains additional language stating that "this Release does not release any claim (i) for continuation health care coverage under COBRA, (ii) for benefits arising from any retirement plan or welfare plan (specifically including benefits from the Employer's long-tern disability benefit plan) in which [the plaintiff] was a participant during [his] employment, and (iii) for

12

workers' compensation benefits available to [the plaintiff]."

The obvious intent of the above language was to substitute any causes of action the plaintiff might have against the defendants and other covered parties—except for causes of action for benefits—in exchange for payment. The plaintiff does not allege that he failed to receive consideration for signing the agreement. Nor is the language unclear or subject to multiple interpretations. Nevertheless, the plaintiff argues that the proposed amendment would be futile because of the defendants' earlier "admissions" that the plaintiff "was pursuing a benefits claim that he had not previously released." (Docket No. 134 at p. 1) The defendants have made no such admission. The defendants did pursue the legal argument that the fiduciary duties claim was merely a "repackaged" claim for benefits, but they nowhere admitted that the claim had not been released; in fact, the Release has, unfortunately, not been discussed in this case until recently. The defendants' earlier position, that the claim must be dismissed because it merely restates the plaintiff's § 1132(a)(3) claim, does not preclude their affirmative defense. Not only is the accord and satisfaction defense not futile; it disposes of the plaintiff's only remaining claim. Assuming that there is not some other basis to deny the motion to amend (as will be discussed below) the court would grant summary judgment on the basis of accord and satisfaction.

**B.     Undue or Prejudicial Delay**

Although the defendants certainly could have moved to amend their answer with more expeditious timing, their delay cannot be said to be undue or prejudicial. Moving to amend at the present time does not place an unwarranted burden on the court or prejudice the plaintiff in any way. The Sixth Circuit has held that "delay alone . . . without any specifically resulting

13

prejudice, or any obvious design by dilatoriness to harass the opponent, should not suffice as a reason for denial" of a motion to amend. *Tefft*, 689 F.2d at 640 (citing *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980).

Typically, the Sixth Circuit first examines the reasons, if any, given for the delay and, second, whether the delay has caused any prejudice. *See, e.g., Morse v. McWhorter*, 190 F.3d at 800-01. The defendants' proffered reason for delay is that it did not occur to them that the fiduciary duties claim could have been *not* considered merely a repackaged claim for benefits until the Sixth Circuit's recent decision in this case. That is, the defendants believed that the claim would be dismissed for other reasons and that the Release was not relevant. Only after the Sixth Circuit held that the fiduciary duties claim was not, in fact, a claim for benefits, but instead a cognizable § 1132(a)(1)(B) claim, did the defendants realize that the accord and satisfaction defense should be pled.

The problem with this argument is that the plaintiff took the position that the fiduciary duties claim was not a claim for benefits before the Sixth Circuit ultimately adopted that position and, therefore, the defendants should have been on notice that the accord and satisfaction defense might apply. The defendants, many months ago, could have easily argued that the fiduciary duties claim was merely a repackaged claim for benefits or, in the alternative, was barred by the Release. In that situation, this case might have been resolved many months ago.

Nevertheless, the delay cannot be said to be undue or prejudicial. The plaintiff cannot show that this delay has caused him prejudice in any way. The plaintiff states that "raising a novel defense after the close of formal discovery does prejudice Plaintiff," (Docket No. 134 at p.3), but does not describe how it does so. The plaintiff, having signed the Release himself,

14

should have been aware of its effect on his claims. If he was not aware of the Release's effect at the outset, he should have been notified when it was turned over to him in the course of discovery. (Docket No. 131 at p. 5) The appearance of the Release at this late stage has not caused the parties to reopen discovery to take depositions or undertake other costly measures; instead, it has merely presented additional issues of law that the parties have briefed along with their Motions for Summary Judgment. The plaintiff is simply not prejudiced by the defendants' motion.

The plaintiff points the court to language in *Morse* that, "while Rule 15 plainly embodies a liberal amendment policy, in the post-judgment context, we must be particularly mindful of not only potential prejudice to the non-movant, but also the movant's explanation for failing to seek leave to amend prior to the entry of judgment." *Morse*, 190 F.3d at 800. However, *Morse* dealt with a plaintiff's motion to amend occurring just after the district court had dismissed the case in its entirety. *Id.* at 798. Accordingly, granting the motion to amend required the district court to open a closed case. In the present case, although final judgment had been entered on both claims at one point, the defendants did not move to amend until after the Sixth Circuit had reversed the court's decision and remanded the fiduciary duties claim to this court. Allowing the defendants to amend their answer at this time does not require reopening a case that would otherwise be closed.

Moreover, the court has, as *Morse* directed, taken both the movants' explanation and the potential prejudice into consideration. Although the defendants' explanation is not ideal, neither does it evince any motive to conceal the affirmative defense. The court is not unduly burdened by addressing the affirmative defense at this time, and the plaintiff has not demonstrated any

15

prejudice resulting from the amendment. Accordingly, the defendants' motion to amend will be granted. *C.f. Langley v. Credit Suisse First Boston Corp.*, 89 Fed. Appx. 938, 944 (6th Cir. 2004) ("There is considerable evidence that Langley was dilatory in advancing the claims set forth in the proposed third amended complaint . . . . Nevertheless, the law in this circuit reveals that the district court abused its discretion in denying leave to amend on this ground because Defendants would not have been sufficiently prejudiced had the court permitted amendment.").

As stated above, the accord and satisfaction defense defeats the plaintiff's claim. Therefore, the court will also grant the defendants' motion for summary judgment.

## IV. The Plaintiff's Motion for Reformation

The plaintiff argues that the Release should be reformed so as not to include the cause of action for breach of fiduciary duties, arguing (1) mutual mistake and (2) that the Release was signed, itself, as a result of the breach of fiduciary duties. Neither of these arguments are persuasive.

### A. Mutual Mistake

Reformation on the basis of a mutual mistake is a longstanding doctrine in the Sixth Circuit and elsewhere. *See Alexander v. Bosch Automotive Systems, Inc.*, 232 Fed. Appx. 491, 498 (6th Cir. 2007) ("Reformation is a contractual remedy that was typically available in equity.") (citing *William Cramp & Sons Ship & Engine Bldg. Co. v. United States*, 239 U.S. 221, 228 (1915)). Mutual mistake applies where "the parties to a contract reached a valid agreement, but that mutually agreed-upon understanding was inadequately, mistakenly, or fraudulently conveyed in writing." *Id.* (citing *Perkins-Campbell Co. v. United States*, 264 U.S. 213, 218-19 (1924)).

16

It is not enough, however, for one party to have been mistaken; rather, the mistake must have been mutual. *See Perkins-Campbell Co.*, 264 U.S.at 218-19 (1924) ("Manifestly the averments of fact contained in the petition show no mutual mistake of the parties which upon well-established principles of equity jurisprudence requires the reformation of the contract.") It is here that the plaintiff's argument fails, for there is no evidence that the defendants were ever mistaken about the content of the Release. The plaintiff argues that the defendants' earlier belief that the fiduciary duties claim did not fall under the purview of the Release constitutes a "mistake" for the purposes of reformation. But this was not a mistake about the Release itself; rather, it was a mistake about the character of the fiduciary duties claim. Not all mistaken positions in a litigation will justify reforming a contract; rather the parties must have been mistaken about the terms of the contract itself.

The defendants maintained—and persuaded this court to agree—that the fiduciary duties claim was a repackaged claim for benefits. This conclusion was subsequently altered by the Sixth Circuit. Due to their mistaken contention about the character of the fiduciary duties claim, the defendants did not believe that the claim was covered by the Release. But this does not mean that the defendants were mistaken about the terms of the Release or that they have taken a contrary position about those terms. A person who, viewing an object at a great distance, mistakes a bird for an airplane, is not necessarily mistaken about the conceptual differences between the two.

When the parties entered the Release, the plaintiff's fiduciary duties claim had not been pled, so the court cannot accept the plaintiff's assertion that "the parties to this action intended and understood the Release not to affect any of the claims Plaintiff asserts in this instant case."

17

(Docket No. 134 at p. 6) Instead, the terms of the agreement reflect the understanding that all claims not for benefits were released, and there is no evidence that the defendants were ever mistaken about those terms. Reformation cannot be granted on the basis of mutual mistake.

### B. Breach of Fiduciary Duties

The plaintiff next argues for reformation on the grounds of a breach of fiduciary duties. Breach of fiduciary duties is not a traditional basis for reforming a contract; rather, reformation is typically allowed only in cases involving mutual mistake or fraud. *See Bituminous Fire & Marine Ins. Co. v. Izzy Rosen's, Inc.*, 493 F.2d 257, 261 (6th Cir. 1974) ("In Tennessee, the reformation of a contract is an equitable remedy, applicable where there is a mutual mistake of the parties, or a mistake of one party induced by the other's fraud."); *see also Pittsburg Lumber Co. v. Shell*, 189 S.W. 879 (1916); *Marron v. Scarbrough*, 314 S.W. 2d 165 (1958). The court could reasonably conclude that this argument is an attempt to "shoe-horn" the very cause of action that the plaintiff has contractually released into an attack upon the Release itself.

The plaintiff has cited cases from the Eastern District of New York indicating that "[t]he waiver of pension benefits under ERISA is subject to closer scrutiny than a waiver of general contract claims." *De Pace v. Matsushita Electric Corp. of America*, 257 F. Supp. 2d 543, 555 (E.D. N.Y. 2003) (quoting *Sharkey v. Ultramar Energy Ltd.*, 70 F.3d 226, 231 (2d Cir. 1995)). In *De Pace*, the court stated that "[a] release in exchange for early retirement benefits is effective only if, in the totality of the circumstances, the employee's waiver of rights was 'knowing and voluntary.'" *Id.* (citing *Laniok v. Advisory Comm. Of Brainerd Mfg. Co. Pension Plan*, 935 F.2d 1360, 1367 (2d Cir. 1991)). However, *De Pace* did not involve mere allegations of breach of fiduciary duties but, rather, fraudulent inducement based on overly optimistic "estimates" of

18

pension benefits. *Id.* at 556-57.

Furthermore, the Release in this case was not "in exchange for early retirement benefits" but rather in exchange for a lump sum payment, and the waiver expressly did not involve claims "for benefits," the sorts of waivers over which courts exercise additional scrutiny. *See Laniok*, 935 2d at 1365-66. Accordingly, *De Pace* and the Second Circuit authority on which it relied are simply not applicable to the Release. The plaintiff has cited no authority, and this court has found none on its own, for the proposition that a waiver of potential causes of action that expressly excludes "for benefits" claims can be voided or reformed on the basis of a breach of fiduciary duties. *See Rolane Sportswear, Inc. v. U.S. Fidelity & Guaranty Co.*, 407 F.2d 1091, 1096 (6th Cir. 1969) ("Under the law of Tennessee, unless a claim for reformation is based upon mutual (rather than unilateral) mistake, or is induced by fraud on the part of one party, relief is unavailable.").

The plaintiff has not alleged fraud on the part of the defendants. Instead, the plaintiff has alleged a variety of vague but true statements made by the defendants' employees, some of which discussed benefits. Although, in each instance, the plaintiff alleges that the statement caused him to believe that he would receive disability benefits until the age of 65, whether or not he was able to work at a different job, none of those statements comes anywhere near such a guarantee. Under Tennessee law, "'[i]ntentional misrepresentation,' 'fraudulent misrepresentation,' and 'fraud' are synonymous and interchangeable terms," *Jenkins v. Brown*, No. M2005-02022-COA-R3-CV, Slip Copy, 2007 WL 4372166 at * 13 n. 25 (Tenn. Ct. App. Dec. 14, 2007), the elements for which include "an intentional misrepresentation of an existing fact." *Id.* at *13 (citing *First Nat'l Bank v. Brooks Farms*, 821 S.W.2d 925, 927 (Tenn. 1991).

19

None of the plaintiff's allegations come close to meeting this standard because they do not include a "misrepresentation," intentional or otherwise.

For instance, the plaintiff alleges that, on the night of his accident, Mr. David Jones and Ms. Kiel told him that El Paso would take care of his family and "not to worry about anything," and that, on this basis, he believed he would be entitled to long term disability benefits until age 65 if he could no longer perform his current job functions. But the statements at issue simply do not support that belief and do not contain any misrepresentations. Similarly, the plaintiff alleges that, after he asked what he would have to do to make sure that he remained qualified for long term disability benefits, Ms. Kiel and Mr. Smith told him that he would have to get a doctor's certification stating that he was still disabled. This was not an untrue statement. To qualify for "own occupation" benefits, Mr. Gore had to obtain a certification saying that he was disabled with regard to his own occupation and, to qualify for "any occupation" benefits, Mr. Gore had to obtain a certification saying that he was disabled with regard to any occupation. None of these statements qualify as misrepresentations of existing facts, and none of them support reforming the Release on the basis of fraudulent conduct.

## CONCLUSION

For the reasons stated herein, the defendants' Motion for Summary Judgment and Motion to Amend will be granted, and the plaintiff's Motion for Summary Judgment and Amended Alternative Motion for Reformation will be denied.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

20