UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOHN T. GORE, ) | |
| ) | |
| Plaintiff, ) | Case No. 3:02-1008 |
| ) | Judge Trauger |
| v. ) | |
| ) | |
| EL PASO ENERGY CORPORATION ) | |
| LONG TERM DISABILITY PLAN and ) | |
| EL PASO ENERGY CORPORATION, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

The defendants have filed a Motion to Reconsider (Docket No. 143), to which the defendants have responded (Docket No. 146), the plaintiff has replied (Docket No. 151), and the defendants have surreplied (Docket No. 158). Additionally, the defendants have filed a Motion for Attorney's Fees (Docket No. 147) to which the plaintiff has responded (Docket No. 152). For the reasons discussed herein, the plaintiff's Motion to Reconsider is **DENIED**, and the defendants' Motion for Attorney's Fees is **DENIED**.

The plaintiff, John T. Gore, was an employee of Tennessee Gas, a subsidiary of El Paso Energy Corporation ("El Paso"), until November 28, 2000, when Mr. Gore suffered injuries as a result of a natural gas explosion at his workplace. At the time of this accident, under the terms of Mr. Gore's long term disability plan, governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, "own occupation" disability benefits were limited to 12 months. After that period of time, "any occupation" benefits—which are only awarded if the employee can show that his injury prevents him from working in "any occupation" for which he

1

is qualified—would still be available. Mr. Gore alleges that he believed, however, that his "own occupation" benefits were to last for 24 months.[1] Mr. Gore alleges that nobody gave him any information otherwise, although he does not deny having received information contrary to his beliefs regarding his plan.[2]

On August 3, 2001, in conjunction with his termination, Mr. Gore signed a General Release And Covenant Not To Sue ("the Release"), in which he released Tennessee Gas, "its present and former parents and its trusts and plans, direct or indirect subsidiaries, affiliates and related companies or entities, regardless of its or their form of business organization," as well as "its affiliates and their directors, officers, employees, agents, and other persons acting on behalf of the Employer . . . from any and all liabilities, demands, claims or suits of whatsoever nature

---

[1] Recently Mr. Gore has lengthened this period of time, alleging that he believed his "own occupation" benefits would last until he was 65. In its February 8, 2008 Memorandum, the court declined to accept Mr. Gore's new allegation, on the basis that Mr. Gore had previously represented to this court, and to the Sixth Circuit Court of Appeals, that these benefits would last 24 rather than 12 months. The court was not in error. The plaintiff's present position as to his benefits is "clearly inconsistent" with his prior position; the Sixth Circuit and this court have indeed accepted the plaintiff's prior position as to what he believed his benefits were and the Sixth Circuit did, in fact, rely on that position in holding that the plaintiff had stated a cognizable fiduciary duties claim under 29 U.S.C. § 1132(a)(3). *See New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001); *see also Browning v. Levy*, 283 F.3d 761, 775 (6th Cir. 2002) ("The doctrine of judicial estoppel bars a party from (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position 'either as a preliminary matter or as part of a final disposition.'") (quoting *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1218 (6th Cir. 1990)). In any event, as the defendants point out, the Release would bar the plaintiff's claim, no matter how long he believed that he should receive benefits.

[2] In his Reply Brief before the Sixth Circuit, the plaintiff admitted to having received an LTD plan summary explaining the difference between "any occupation" and "own occupation" benefits. (Docket No. 128, Ex. 3). In addition, in his deposition, the plaintiff admitted that he could not deny having received an enrollment guide document explaining his benefits because he was not at home for a period of time, and his wife might have laid it somewhere. (Docket No. 115, Ex. 1).

that I may have . . . arising from or in any way related to my employment with the Employer." In consideration for signing the Release, Mr. Gore was paid $49,000.00. The Release did not, however, include "any claim . . . for benefits arising from any retirement plan or welfare plan (specifically including benefits from the Employer's long-term disability benefit plan) in which [the plaintiff] was a participant during [his] employment." (Docket No. 116, Ex.1 at ¶ 4)

In October 2003, Mr. Gore filed this suit against both Liberty and El Paso, alleging (1) wrongful denial of long-term disability benefits under El Paso's LTD plan under ERISA, 29 U.S.C. § 1132(a)(1)(B), (2) a claim for civil penalties due to the defendants' failure to provide certain documents within 30 days of a written request, and (3) a claim for breach of fiduciary duties against both Liberty and El Paso under ERISA, 29 U.S.C. § 1132(a)(3).

On February 23, 2007, the Court of Appeals for the Sixth Circuit affirmed this court's dismissal of Mr. Gore's claim for benefits and civil penalties, but reversed the court's dismissal of Mr. Gore's fiduciary duty claim. (*Id*. at p. 2) The Sixth Circuit held that the fiduciary duty claim was not a repackaged claim for benefits, even though the remedy that would have been available to Mr. Gore had he prevailed on his benefits claim would have rendered his fiduciary duty claim moot. (*Id*. at p. 8-9) Instead, the Court found that, although the remedies overlapped, the injuries were different and, therefore, "[t]he two claims are distinct and unrelated to each other." (*Id*. at p. 8) Accordingly, the ruling was reversed and remanded to this court for further proceedings. On February 8, 2008, this court granted the defendants' motion to amend its answer to include the defense of accord and satisfaction, on the basis of the signed Release, and granted the defendants' motion to dismiss this case based on that affirmative defense. (Docket No. 140)

3

## I. Standard of Review

The plaintiff moves for reconsideration under Rule 59(e) and Rule 60 of the Federal Rules of Civil Procedure. Rule 59(e) merely provides that "A motion to alter or amend a judgment shall be served no later than 10 days after entry of the judgment." Fed. R. Civ. P. 59(e).

The Sixth Circuit has held that "[a] motion to alter or amend judgment pursuant to Federal Rule of Civil Procedure 59(e) may be granted (1) to correct a clear error of law; (2) to account for newly discovered evidence or an intervening change in the controlling law; or (3) to otherwise prevent manifest injustice." *CGH Transport, Inc. v. Quebecor World, Inc.*, No. 06-6399, 2008 WL 116385 at *5 (6th Cir. Jan. 8, 2008) (citing *GenCorp., Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999)). Any "'newly discovered evidence' . . . must have been previously unavailable." *GenCorp.*, 178 F.3d at 834 (citing Charles A. Wright, 11 *Federal Practice and Procedure* § 2810.1 at 127-28 (1995)). In addition, "under Rule 59(e), parties cannot use a motion for reconsideration to raise new legal arguments that could have been raised before a judgment was issued." *Roger Miller Music, Inc. v. Sony/ATV Publishing*, LLC, 477 F.3d 383, 395 (6th Cir. 2007) (citing *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998) ("A motion under Rule 59(e) is not an opportunity to re-argue a case.")).

The standard "for granting a Rule 60(b) motion is significantly higher than the standard applicable to a Rule 59 motion." *Feathers v. Chevron U.S.A., Inc.*, 141 F.3d 264, 268 (6th Cir. 1998)). Rule 60 provides that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1)

4

mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief." Fed. R. Civ. P. 60(b).

## II. The Plaintiff's New Evidence

The plaintiff supports his Motion for Reconsideration with "new evidence;" specifically, the plaintiff has attached to his motion a letter from the defendant to the plaintiff, dated June 19, 2001, offering an advance of $8,180.00, amounting to two months of base salary, to provide the plaintiff with income while his long term disability application was being processed. (Docket No. 144, Ex. 1) The letter stipulates that, if the plaintiff signs the Release, the advance will be deducted from the $49,000.00 consideration that he would receive at that time. (*Id*.) However, under the terms of the letter, if the plaintiff does not sign the Release, he must pay the advance back in some other way. (*Id*.)

The plaintiff acknowledges that he personally received this letter and alleges that it was obtained "by Plaintiff's counsel from Plaintiff's workers' compensation counsel by email on February 13, 2008." (Docket No. 144 at 9) Accordingly, it is not newly discovered evidence. Newly discovered evidence must have been "previously unavailable." *See GenCorp*, 178 F.3d at 834. Further it is "'well-established . . . that a district court does not abuse its discretion in denying a Rule 59 motion when it is premised on evidence that the party had in his control prior

5

to the entry of judgment.'" *General Truck Drivers, Chauffeurs, Warehousemen & Helpers, Local No. 957 v. Dayton Newspapers, Inc.*, 190 F.3d 434, 445 (quoting *Emmons v. McLaughlin*, 874 F.2d 351, 358 (6th Cir. 1989)); *see also Al-Sadoon v. FISI Madison Financial Corp.*, 188 F. Supp. 2d 899, 903 (declining to consider evidence on a motion to reconsider because "none of [it] [was] newly discovered and all of it was available to the defendant when it filed its previous motion for summary judgment"); *Scott v. Metropolitan Health Corp., 234 Fed. Appx. 341*, 366 (6th Cir. 2007) ("As with other rules of civil and criminal procedure, Rule 59(e)'s new-evidence prong required [plaintiff] to show that due diligence would not have uncovered this evidence . . . .").

Additionally, the plaintiff urges the court to consider this letter "to prevent manifest injustice." (Docket No. 144 at 9, n. 6) No injustice, manifest or otherwise, would be prevented by the court's consideration of this letter. The plaintiff alleges that the letter shows that the plaintiff was under economic duress when he signed the Release. But the letter shows nothing of the kind. Instead, it shows that the defendants offered him an advance on his long term disability payments. The advance was to be paid back. If the plaintiff accepted the terms of the Release, it would be subtracted from the payment forthcoming to him under the release. If not—assuming that he chose to accept the advance—then he would have to pay it back in some other way.

Offering an advance is not duress. In fact, the Sixth Circuit has held, in the context of a waiver of claims under the ADEA, that, although the plaintiff's waiver resulted in "approximately twice as much in termination benefits than he would have been entitled to under the normal severance package plans," the employer's offer did not constitute duress. *Adams v. Philip Morris, Inc.*, 67 F.3d 580, 583 (6th Cir. 1995) ("Although [the plaintiff] certainly felt

6

some economic pressure to accept the attractive severance package and settle any potential claims he might have against [the defendant], this pressure does not rise to the level of economic duress."); *see also Sayon v. Ohio Dep't of Admin. Servs.*, No. 2:06-0728, 2007 WL 1500905 at *6 (S.D. Ohio May 21, 2007) (rejecting the plaintiff's argument that choosing to sign a waiver in order to receive a payment was economic duress).

Neither did the defendants violate any fiduciary duties by offering the plaintiff an advance. The plaintiff cites cases in which abuse of fiduciary duties assigned under federal law rendered contracts voidable. None of these cases, however, supports the argument that offering an advance—which must eventually be paid back—constitutes an abuse of the fiduciary relationship. In fact, each of the cases cited by the plaintiff either involves serious misconduct on the part of the fiduciary, *see, e.g., Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1474-75 (6th Cir. 1990) (involving direct misrepresentations on the part of the fiduciary as to the maximum amount the price of the securities at issue could drop in a given day, as well as a threat that, if the release was not signed, the plaintiff would be barred from entering additional transactions to pay off the debt), or statutory provisions that do not apply to the plaintiff's cause of action, *see Raczak v. Ameritech Corp.*, 103 F.3d 1257, 1261-64 (6th Cir. 1997) (interpreting 29 U.S.C. § 626(f)(1), a provision of the ADEA), *Oubre v. Entergy Operations, Inc.*, 522 U.S. 422, 425 (1988) (also interpreting § 626(f)(1)), *Runyan v. Nat'l Cash Register Corp.*, 787 F.2d 1039, 1044 (6th Cir. 1986) (also interpreting the ADEA's waiver provisions). Although it is true that an "inherently exploitative situation" can render a release voidable, *Street v. J.C. Bradford & Co.*, 886 F.2d at 1481 n. 3, the case law simply does not support the plaintiff's argument that an advance of funds creates that situation.

7

## III. The Effect of the Release

In addition, the plaintiff argues that the Release itself does not act to bar his claim for breach of fiduciary duties because, in some cases, extra benefits can be awarded for successful fiduciary duties claims. In so arguing, the plaintiff mistakes the nature of the relief he is requesting for the nature of the claim itself, which is the very error the Sixth Circuit addressed earlier in this case. In *Gore v. El Paso Energy Corp. Long Term Disability Plan*, 477 F.3d 833, 841-42 (6th Cir. 2007), the Sixth Circuit held that the plaintiff's remaining fiduciary duties claim could go forward only because it was *not* a *claim* for benefits. This court had been mistaken about the nature of the claim because the plaintiff did request benefits as damages. *Id*. at 842 ("The reason why the district court and the Defendant confuse Gore's argument is because the remedy available to Gore if he had succeeded in his 'any occupation' claim would have rendered the 'own occupation' misrepresentation moot.") However, the Sixth Circuit noted that it is not the remedy that controls this issue, but the nature of the claim. *Id*. ("When Gore did not receive the 'any occupation' wages, his misrepresentation claim was not moot because his injury from the misrepresentation was not eliminated."). Accordingly, the Sixth Circuit held that the plaintiff's fiduciary duties claim—although it does request benefits as a remedy—is not a claim for benefits under the plan but, rather, a claim for equitable relief under § 1132(a)(3), reasoning that "it is undisputed that Gore is not entitled to the benefit under the terms of the plan." *Id*.

The Release explicitly releases the defendants from all liabilities except for "any claim . . . for benefits arising from any retirement plan or welfare plan (specifically including benefits from the Employer's long-term disability benefit plan) in which [the plaintiff] was a participant during [his] employment." (Docket No. 116, Ex.1 at ¶ 4) Quite plainly, this exception does not

8

include the plaintiff's fiduciary duties claim—even though the plaintiff has requested benefits as an equitable remedy under that claim—because it is not a claim for benefits under the plan. The court was not in clear error of the law when it so held in its last order.[3]

## IV. The Plaintiff's Arguments for Reformation of the Release

Finally, the plaintiff reiterates its argument that the Release should be reformed on the basis of a breach of fiduciary duties. Assuming that the plaintiff is correct in arguing that a

---

[3]In addition, the plaintiff asserts that the court was in error when it held that he would not be unduly prejudiced by the defendants' amendment of its answer to include the accord and satisfaction defense, on the basis that the Sixth Circuit's decision in *Macurdy v. Sikov & Love, P.A.*, 894 F.2d 818, 824 (6th Cir. 1990) creates a "*per se*" rule of prejudice where a defendant attempts to raise accord and satisfaction at the summary judgment stage. The plaintiff's assertion is in error. In *Macurdy*, the Sixth Circuit found that, under the facts of that case, "to allow the defendants to raise this affirmative defense initially at the summary judgment motion would violate Rule 8(c) and unfairly prejudice the plaintiff." *Id*. It did not establish any rules applicable to all accord and satisfaction defenses. In fact, it has long been established in the Sixth Circuit that "delay alone is not a sufficient reason for denying leave" to amend and, instead, "[t]he delay must have resulted in prejudice to the party opposing the motion." *Tefft v. Seward*, 689 F.2d 637, 640 (6th Cir. 1982). The Sixth Circuit reaffirmed this tenet in *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1445-46 (6th Cir. 1993), when it held that an affirmative defense raised for the first time in a brief supporting a party's response to a motion for summary judgment—and in the total absence of a motion to amend—was not necessarily barred by Rule 8(c). Because the fraud defense in that case, which was governed by Kentucky law, included a requirement that the party asserting the defense "must act 'within a reasonable time, taking all circumstances into consideration,'" *id*. (quoting *Chaplin v. Bessire & Co.*, 361 S.W.2d 293, 294-95 (Ky. 1962)), the Court held that "it is for a jury to determine whether Moore's delay in raising the defense of fraudulent inducement was reasonable." *Id*.; *see also Morse v. McWhorter*, 290 F.3d 795, 800-01 (6th Cir. 2002) (permitting the plaintiffs to file a second amended complaint after the entry of final judgment on the basis that the defendant would not "be significantly prejudiced"). Accordingly, the affirmative defense was *not* barred under Rule 8(c). The plaintiff has provided no rationale for distinguishing between the accord and satisfaction defense and the fraudulent inducement defense in the creation of a "*per se*" rule; certainly the Sixth Circuit has not provided that rationale, nor has it created such a rule. In its February 8, 2008 Memorandum, citing Sixth Circuit precedent, the court held that the defendants' motion to amend should be granted in accordance with Rule 15 of the Federal Rules of Civil Procedure, specifically addressing futility and undue or prejudicial delay (Docket No. 139 at 9-16) and, in so holding, it was not in error.

9

release of ERISA claims that specifically excludes claims "for benefits" under the ERISA plan can be reformed on such a basis—a position for which the plaintiff has provided no direct authority—nevertheless, the plaintiff has not proffered sufficient evidence to survive summary judgment on this issue.[4]

The basis for the plaintiff's breach of fiduciary duties argument is that he was never informed about the difference between "any occupation" or "own occupation" benefits and that, accordingly, he believed he would receive "any occupation" payments for longer than he did. The defendants have submitted evidence indicating that it informed the plaintiff of the details of his plan and, specifically, the amount of time he would be entitled to "any occupation" benefits. The plaintiff does not deny having received some of this information in the mail. In addition, the defendants have provided a copy of a letter they mailed to the plaintiff stating that, "during the 12 Month Own Occupation Benefit, 'Disability' or 'Disabled' means . . . the covered person is unable to perform all of the material and substantial duties of his occupation . . ." but that, "[a]fter twelve months of benefits have been paid," the terms mean "the Covered Person is unable to perform, with reasonable continuity, all of the material and substantial duties of his own or any other occupation for which he is or becomes reasonable [sic] fitted by training, education, experience, age and physical and mental capacity." (Docket No. 146, Ex. 3). This

---

[4]The plaintiff cites *Swinney v. General Motors*, 64 F.3d 512, 518-19 (6th Cir. 1995) for the proposition that, "if the employer's breach of fiduciary duty causes the employee to either give up his right to benefits or to fail to participate in a plan, then the employee has standing to challenge that fiduciary breach." But the plaintiff does not allege that he gave up his rights in a plan or failed to participate in a plan. Instead, the plaintiff alleges that he simply believed he would receive more benefits. Had the plaintiff failed to sign the Release, this fact would not have enrolled him in a plan that matched his expectations regarding his benefits. In signing the Release, the plaintiff did not give up any right to benefits under his plan.

10

letter was dated July 6, 2001; the plaintiff signed the Release approximately one month later, on August 3, 2001.

Nevertheless, the plaintiff argues that the plan should be reformed to include the benefits to which he mistakenly believed himself entitled and that the release itself should be reformed in order not to bar this specific claim. The basis for this double layer of reformation is not any statement made by the defendants actually indicating that the plaintiff was entitled to the benefits he is requesting. Instead, the plaintiff relies on true statements made by the defendants in response to his questions. These statements were not "half true;" they were wholly true. The plaintiff does not allege that he relied on these statements in actually deciding to enroll or not to enroll in an ERISA plan, or that the statements caused him to commit some procedural error that barred him from enrollment. The heart of this case appears to be that the plaintiff was confused about his benefits. However, the record simply contradicts the plaintiff's contention that this misconception was due to any statements or omissions on the part of the defendants, and there is no evidence that the plaintiff's confusion resulted in any failure to receive benefits under the terms of his plan.

In addition to this, there is the Release signed by the plaintiff in the presence of his own counsel which, on its face, releases the defendants from liability as to this very claim. The plaintiff has not alleged that he was confused about the terms of the Release itself. The terms are plain, and the plaintiff had the benefit of his counsel's advice when he signed it. The plaintiff alleges that the Release should be reformed because he was confused about the duration of his long term disability benefits. The cases that the plaintiff cites in support of this argument are inapposite, and the court was not in clear error of the law when it rejected this argument in its

11

last order.

For instance, in *Street*, 866 F.2d at 1474, a case involving several securities transactions, one of the plaintiffs testified that the defendants had given him information about his commodity trade orders that turned out to be demonstrably false, resulting in major losses to the plaintiffs. The defendants next met with the other plaintiff and promised that if the plaintiffs would, through a mortgage, raise enough money to meet the margin call, the defendants would credit their account with $50,000 and promised to make up the loss with more trading. *Id*. At a final meeting, after the plaintiffs had entered a mortgage agreement to raise the money to perform the trades, the defendant presented them with a release, stating that, if the plaintiffs "expected to do any more business with" the defendants, they "had to sign the form, had no choice in that matter." *Id*. Further, the plaintiffs testified that, "after execution of the release, a number of unauthorized transactions occurred and fraudulent limitations were placed upon their commodities account." *Id*.

The Sixth Circuit held that the "federal common law of release" controlled the validity of the release. *Id*. at 1481-82. Reasoning that, "[o]bviously, Phil Street's testimony regarding the procurement of the release, as quoted above in the statement of facts, if given at trial would provide more than a scintilla of evidence that the federal standards pertaining to releases between persons having a fiduciary relationship were not observed by the defendants," and that "[t]he release is therefore voidable, at least as to the federal causes of action." *Id*. at 1482.

*Street* simply does not provide the plaintiff with a basis for reforming the Release in this case. Unlike the plaintiff in *Street*, the plaintiff in this case has identified no irregularity regarding the procurement of the Release, let alone any threats or allegations of fraudulent

12

conduct.  Although the federal common law of release may provide an avenue for reformation in some cases alleging fiduciary duties violations, this is not that case.

Although *Krohn v. Huron Memorial Hospital*, 173 F.3d 542, 546-47 (6th Cir. 1999), did not involve construction of a release, the plaintiff has cited this case for the proposition that fiduciary duties violations can provide a basis for an award of additional benefits under an ERISA plan.  In *Krohn*, the plaintiff presented his application for disability benefits to an employee of the defendant, rather than submitting it to the defendant's long-term disability insurance provider, which is where the form was supposed to be sent.  *Id*. at 546.  This employee then placed the application in a file, rather than submitting it herself and, three years later, the provider denied the plaintiff's claim for benefits as untimely.  *Id*.  The Sixth Circuit held that the defendant had violated its fiduciary duties by failing to file the plaintiff's application for benefits.  *Id*. at 551-52.

The plaintiff's husband had also called the defendant and spoken with the same employee, asking "about the benefits to which his wife was entitled as a result of her injury."  *Id*. at 545.  The employee told the plaintiff's husband only about short-term benefits, stating that "you cannot collect any money from the short-term disabilities if you're collecting it from other companies."  *Id*.  The Sixth Circuit held that the employee had violated her duty to inform, reasoning that the "'duty to inform is a constant thread in the relationship between beneficiary and trustee; it entails not only a negative duty not to misinform, but also an affirmative duty to inform when the trustee knows that silence might be harmful.'"  *Id*. at 548 (quoting *Bixler v. Central Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1300 (3d Cir. 1993)).

*Krohn* does not support the plaintiff in this case.  Under *Krohn*, "a misrepresentation is

13

material if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision in pursuing disability benefits to which she may be entitled." *Id*. at 547. Presumably, this standard is equally applicable to omissions. *Id*. at 548. None of the plaintiff's alleged "half-truths" meet this standard. The plaintiff asked two of the defendants' employees what he had to do to remain qualified for long term disability benefits. The employees told the plaintiff that, in order to remain qualified for long term disability benefits, he would have to get a doctor's certification stating that he was still disabled. In so doing, they did not explain that "disabled" meant that he was unable to perform any occupation, rather than unable to perform his own occupation. Unlike the plaintiff in *Krohn*, Mr. Gore did not say anything that can be construed as a request for the omitted information. Although the duty to inform does entail "a duty to inform when the trustee knows that silence might be harmful," *id*. at 548, it does not require a trustee to state everything he or she knows about an ERISA plan in response to every question. *See also Varity Corp. v. Howe*, 516 U.S. 489, 492 (a fiduciary duties case involving "serious deception" on the part of the fiduciaries); *Swinney v. General Motors Corp.*, 46 F.3d 512, 520 (6th Cir. 1995) (ERISA "does not impose upon the employer a 'duty of clairvoyance'") (internal citations omitted)).

Moreover, unlike the plaintiff in *Krohn*, Mr. Gore's misunderstanding of his long term disability plan did not result in any failure to receive benefits under the applicable plan. This is an important distinction. In *Krohn*, the defendant admitted that its employee had failed to tell the plaintiff's husband about short-term disability benefits. As a result, the plaintiff failed to adequately apply for the benefits, and she did not receive them. In this case, Mr. Gore did not rely on the defendants' statements (or lack of statements) in failing to apply for his benefits. Mr.

14

Gore applied for and received his benefits; those benefits were simply not what he expected. In addition, unlike the plaintiff in *Krohn*, the plaintiff in this case was mailed a letter explaining to him the specific issue about which he was confused. Finally, *Krohn* does not involve reformation of a release but, rather, a fiduciary duties claim as to the plan itself. The court in no way contradicted the Sixth Circuit's *Krohn* decision when it declined to reform the Release.[5]

---

[5] As an additional basis for dismissing the plaintiff's claim for breach of fiduciary duties, the defendants, in their surreply brief, suggest that the doctrine of judicial estoppel should bar that claim because the plaintiff did not disclose it to the Bankruptcy Court when he filed for Chapter 13 protection or at any time thereafter. The plaintiff first brought his Chapter 13 plan to this court's attention in his response to the defendants' motion for attorney's fees. The Bankruptcy Code requires debtors to file "a schedule of assets and liabilities, a schedule of current income and current expenditures, and a statement of the debtor's financial affairs." 11 U.S.C. § 521(1). This "duty of disclosure is a continuing one, and a debtor is required to disclose all potential causes of action" to the bankruptcy court. *Bohanan v. Bridgestone/Firestone North American Tire*, LLC, No. 3:06cv122, 2007 WL 1091209 at *3 (M.D. Tenn. 2007) (quoting *In Re Costal Plains, Inc.*, 179 F.3d 197, 208 (5th Cir. 1999)). The disclosure obligations "are at the very core of the bankruptcy process and meeting these obligations is part of the price debtors pay for receiving the bankruptcy discharge." *Id.* (citing *In re Colvin*, 288 B.R. 477, 481 (Bankr. E.D. Mich. 2003); *see also In re Costal Plains, Inc.*, 179 F.3d 197, 208 (5th Cir. 1999) ("Viewed against the backdrop of the bankruptcy system and the ends it seeks to achieve, the importance of this disclosure duty cannot be overemphasized.") (citing *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414 (3d Cir. 1988)). The Sixth Circuit has found that judicial estoppel should be applied to bar causes of action that were not disclosed to the bankruptcy court. *See Lewis v. Weyerhauser Co.*, 141 Fed. Appx. 420, 425 (6th Cir. 2005) ("This court has previously found that pursuing a cause of action that was not disclosed as an asset in a previous bankruptcy filing creates an inconsistency sufficient to support judicial estoppel.") (citing *Eubanks*, 385 F.3d at 898; *Browning*, 283 F.3d at 775). The Sixth Circuit has held that "[t]he doctrine of judicial estoppel bars a party from (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position 'either as a preliminary matter or as part of a final disposition.'" *Browning v. Levy*, 283 F.3d 761, 775 (6th Cir. 2002) (quoting *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1218 (6th Cir. 1990)). In addition to the bases for granting summary judgment identified in the court's February 8, 2008 Memorandum, the doctrine of judicial estoppel could also bar the plaintiff's fiduciary duties claim. The plaintiff clearly had notice of this cause of action when he filed for Chapter 13 bankruptcy protection. He filed this case on October 23, 2002, and he filed his Chapter 13 petition on January 17, 2005. (Docket No. 157, Ex. 2) Accordingly, when he filed his petition, the plaintiff was taking a contrary position to that taken in this court. The Bankruptcy Court accepted this position when it created a

15

## V.     The Defendants' Motion for Attorney's Fees

In determining whether to award attorney's fees under ERISA, the following five factors are to be considered:

> (1) The degree of the opposing party's culpability or bad faith;
> (2) The opposing party's ability to satisfy an award of attorney's fees;
> (3) The deterrent effect of an award [on] other persons under similar circumstances;
> (4) Whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and
> (5) The relative merits of the parties' positions.

*Hoover v. Provident Life and Accident Ins. Co.*, 290 F.3d 801, 809 (6th Cir. 2002)).

With regard to the first factor, the defendants point to the plaintiff's changing positions on the duration of his "own occupation" disability benefits as indicative of bad faith. The plaintiff alleges that he "learned new facts" during discovery that justified this evolution. (Docket No. 153 at 2) These facts appear to be limited to two affidavits from Mr. Gore's former coworkers indicating that they believed they would receive "any occupation" disability benefits until they were 65 and had not received information to the contrary until 2001 or 2002, when the defendants informed them at a meeting that those benefits were limited to 12 months. (*See* Docket No. 121, 122) It is not clear how these affidavits can be reconciled with Mr. Gore's own admission that he received a Summary Plan Description for his 1995-1996 benefits that limited his "own occupation" benefits to 24 months.[6] Affidavits from Mr. Gore's former

---

payment schedule after consulting the plaintiff's listed assets. Therefore, in addition to the reasons for granting summary judgment previously examined, summary judgment would also be appropriately granted on the basis of judicial estoppel.

[6] As explained in the February 8, 2008, Memorandum, the 24-month period was reduced to 12 months on January 1, 2008, after defendant El Paso acquired Tennessee Gas. (Docket No. 139 at 2-3)

16

coworkers—who did not actually receive long term disability benefits of any kind—would not seem to overcome this admission. Nevertheless, the court does not find that this discrepancy itself demonstrates the requisite bad faith or culpability. Accordingly this factor weighs in favor of the plaintiff.

The second factor, the opposing party's ability to satisfy the award, also weighs in favor of the plaintiff. The plaintiff is working and has received severance pay from El Paso as well as a settlement of approximately $120,000 for a worker's compensation claim. However, the plaintiff and his wife filed for Chapter 13 bankruptcy protection in 2005, and they are still making payments on their bankruptcy plan.

The third factor, the deterrent effect, weighs in favor of the plaintiff as well. Although the court has found that the plaintiff's claim could not survive summary judgment, awarding attorney's fees in such cases would tend to create a chilling effect on other plaintiffs who seek redress under ERISA.

The fourth factor, whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA, plainly weighs in favor of the plaintiff. The defendants were not seeking to confer any such benefit or resolve any significant legal questions regarding ERISA, although, during the course of this case, the court has addressed several interesting legal issues under ERISA.

Finally, the fifth factor weighs in favor of the defendants who, as has been discussed in this Memorandum and Order, and in the court's February 2, 2008 Memorandum, have made more meritorious arguments following the Sixth Circuit's February 23, 2007 Opinion. This

17

factor alone, however, cannot support an award of attorney's fees. Accordingly, the defendants' motion for attorney's fees must be denied.

## **CONCLUSION**

For the reasons stated herein, the Motion to Reconsider filed by the plaintiff is **DENIED** and the defendants' Motion for Attorney's Fees is **DENIED**.

It is so ordered.

Enter this 1st day of April 2008.

_____
ALETA A. TRAUGER
United States District Judge

18

Case 3:02-cv-01008   Document 161   Filed 04/01/08   Page 18 of 18 PageID #: 1398